UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CADE R.,[1]<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 24-cv-06831-AMO<br><br>**ORDER DENYING REVERSAL OF SOCIAL SECURITY COMMISSIONER'S FINAL DECISION AND AFFIRMING DENIAL OF SOCIAL SECURITY BENEFITS**<br><br>Re: Dkt. Nos. 16, 21 |

Plaintiff Stephen Cade R. seeks reversal of the Social Security Administration Commissioner's final administrative decision denying his application for benefits under Title XVI of the Social Security Act. The Commissioner asks that the Court affirm the decision. For the reasons stated below, the Court **DENIES** Plaintiff's request to reverse the Commissioner's unfavorable decision and **GRANTS** the Commissioner's request to affirm the denial of benefits.

**I.    BACKGROUND**

On August 9, 2019, Plaintiff protectively filed applications[2] for Social Security Disability

---

[1] The Court partially redacts Plaintiff's name to mitigate privacy concerns. *See Heather L. v. Saul*, No. 19-CV-02483-SI, 2020 WL 3504468, at *1 n.1 (N.D. Cal. June 29, 2020) (citing Fed. R. Civ. P. 5.2(c)(2)(B)).

[2] "Protective filing is a Social Security term for the first time [a claimant] contact[s] the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. This is important because protective filing often affects the entitlement date for disability and retirement beneficiaries along with their dependents." *Burnham v. Berryhill*, No. 17-CV-05476-JCS, 2019 WL 1332397, at *1 n.2 (N.D. Cal. Mar. 25, 2019) (internal quotations and citation omitted). The Court notes that the Administration's "Application Summary" indicates Plaintiff applied on October 8, 2019, not August 9, 2019, which is the date noted on Plaintiff's applications. *See* Administrative Record ("AR") at 373, 375, 382. The Court need not reconcile this discrepancy because it is immaterial to the resolution of the issues on appeal.

Insurance ("SSDI") benefits under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act, alleging a disability onset date of January 9, 1985.  AR at 353-374, 375-381, 382-388.  In support of the applications, Plaintiff submitted a disability report,[3] a function report,[4] and a work history report.[5]  *Id.* at 437-446, 450-458, 459-469.

In the disability report, Plaintiff identified the following conditions as limiting his ability to work: right knee arthritis, ligament tears – both knees, left knee bone marrow edema, PTSD, autism spectrum disorder – Asperger's syndrome, hepatitis C, and seasonal allergies.  *Id.* at 438.  In his list of medications, Plaintiff included Flonase and Claritin for seasonal allergies, and Naproxen and Baclofen for pain.  *Id.* at 441.

In the function report, Plaintiff described how his illnesses, injuries, or conditions limited his ability to work as follows:

> My knee injuries + pain prevent me from using stairs which is required in security.  My PTSD + Asperger's prevents me from being around large groups of people.  Over stimulation is a bad thing.  When I'm processing the stimulus I shut down.  I get introspective and can't focus on what is going on.

*Id.* at 450.  He described his daily activities as follows: "I don't have a regular routine.  If I'm having an autistic episode I can't leave my room.  If I'm feeling ok I can go out."  *Id.* at 451.  He indicated that he cannot climb stairs but used to move around better.  *Id.*  He was born with autism

---

[3] The Administration uses the information a claimant provides in a disability report to decide whether the claimant is disabled.  *See* Form SSA-3368-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3368-bk.pdf (last visited Sept. 2, 2025).

[4] A function report, whether from the claimant or from a third-party who knows the claimant, is a form the Administration uses to obtain information about the claimant's activities and abilities.  *See* Form SSA-3373-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3373-bk.pdf (last visited Sept. 2, 2025); *see also* Form SSA-3380-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3380.pdf (last visited Sept. 2, 2025).

[5] The Administration uses the information provided in the work history report to understand how the claimant's "illnesses, injuries, or conditions might affect [their] ability to do work for which [they] are qualified.  Th[e] information tells [the Administration] about the kinds of work that [the claimant] did, including the physical and mental requirements of each job."  *See* Form SSA-3369-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3369.pdf (last visited Sept. 2, 2025).

spectrum disorder, does not relate well with others, and gets very upset; his autism makes it hard to be around people, and he was laid off from one job because of how he gets along with others. *Id.* at 451, 455, 456. He has trouble sleeping due his PTSD and the pain in his knees, which also makes it hard to do physical work. *Id.* at 451, 455. He follows written and spoken instructions "to the letter" but gets upset if they are illogical. *Id.* at 455. With respect to getting along with authority figures, "[a]s long as they are respectful, [he is] respectful." *Id.* at 456. It "[d]epends on the individual." *Id.* Plaintiff reported using a cane, which was not prescribed by a doctor, and indicated taking Naproxen and Baclofen. *Id.* at 457.

In the work history report, Plaintiff listed his prior jobs as a street cleaner (from February 2019 to April 2019) and a security officer (from April 2019 to February 2020). *Id.* at 461. He described the symptoms he experienced while working these jobs as follows:

> Everyday I worked, I came home in massive pain. The pain is in my knees, back and feet. It was mentally exhausting for me to talk with so many people everyday. It was greatly distressing and degrading emotionally. I got angry a lot because a lot of things done were not done right. They would not let us carry handcuffs, tasers or any way to enforce the rules and it made me very angry that this was the job I got stuck with. There were times I talked with my supervisor that I need[ed] to go somewhere where there were not a lot of people. I asked to work in portions of the park where people did not go. I had to make it [*sic*] in no uncertain terms that during busy times I had to work in non occupied areas.

*Id.* at 468.

On December 10, 2020, the Social Security Administration denied Plaintiff's applications on initial review. *Id.* at 148-153, 154-159. Plaintiff sought reconsideration. *Id.* at 160-167, 168-169. On July 28, 2021, the Administration denied the applications on reconsideration. *Id.* at 170-175, 176-182. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 184. A telephonic hearing was set for March 4, 2022. *Id.* at 191-218. At Plaintiff's request, the setting was converted to an in-person hearing. *Id.* at 252. The in-person hearing was set for August 11, 2022. *Id.* at 253-289, 290-316. On August 4, 2022, Plaintiff's counsel requested a continuance of the August 11, 2022 in-person hearing after losing contact with Plaintiff, who was unhoused at the time and had left the navigation center where he was staying. *Id.* at 325-326. Counsel also requested a continuance to supplement the record with treatment records from

periods of incarceration and to allow time for Plaintiff to complete a psychological evaluation. *Id.* On August 11, 2022, ALJ Ruxana Meyer proceeded with the in-person hearing as scheduled. *Id.* at 17. Plaintiff's counsel appeared at the hearing, but Plaintiff did not. *Id.* The ALJ heard testimony from two medical experts, a board-certified internist, William Biles, M.D., and a psychiatrist, Linda Miller, D.O.,[6] as well as a vocational expert, Jeanine Metildi. *Id.* at 17, 47, 59, 75.

On September 18, 2023, the ALJ issued an unfavorable decision. *Id.* at 14. Following the five-step sequential process that governs Social Security disability determinations,[7] the ALJ

---

[6] After the medical experts' testimony, Plaintiff's counsel objected to the testimony of these witnesses based on their use of an incorrect definition of "severe." *Id.* at 22, 74. The ALJ sustained the objection, finding the experts' testimony persuasive only "to the extent they support that [Plaintiff] did not have an impairment or combination of impairments that would meet or equal a listing." *Id.* These "listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity." *Kitchen v. Kijakazi*, 82 F.4th 732, 741 (9th Cir. 2023) (internal quotations and citation omitted).

[7] The Social Security Administration's regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The relevant inquiry at each step is as follows:

> 1. Is [the] claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Nonetheless, at every step of the inquiry,

4

1  determined that Plaintiff is not disabled.

2  On November 15, 2023, Plaintiff requested review of the ALJ's unfavorable decision by

3  the Appeals Council. *Id.* at 4, 347-348, 528-531. The Appeals Council denied Plaintiff's request

4  for review on July 26, 2024, and the ALJ's unfavorable decision became the final decision of the

5  Commissioner. *Id.* at 1.

6  On September 27, 2024, Plaintiff filed this action for judicial review under 42 U.S.C.

7  § 405(g). ECF 1 ("Compl."). On January 21, 2025, Plaintiff filed his opening brief seeking

8  reversal of the Commissioner's denial of Title XVI benefits and a remand for further proceedings.

9  ECF 16 ("Op. Br."). The Commissioner filed its responsive brief on April 3, 2025. ECF 21

10 ("Resp. Br."). Plaintiff's reply brief followed on May 1, 2025.[8] ECF 22 ("Reply Br.").

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), district courts have authority to review a decision by the Commissioner denying a claimant disability benefits. "Th[e] court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). It is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (citations omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm

---

the ALJ has an affirmative duty to assist the claimant in developing the record. *Id.* at 1098 n.3. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.* "Between the third and fourth steps, [the] ALJ determines a claimant's residual functional capacity, i.e., the extent of mental and physical activities a claimant can perform in a work setting despite their limitations." *Nadon v. Bisignano*, 145 F.4th 1133, 1135-1136 (9th Cir. 2025) (citations omitted).

[8] Though the Commissioner styled its filing as a combined cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment, the Court refers to the filings as called for by the Social Security Procedural Order, ECF 5, entered in this case. That order requires the filing of briefs rather than cross-motions for summary judgment.

1  simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466

2  F.3d 880, 882 (9th Cir. 2006) (internal quotations and citation omitted). "If the evidence can

3  reasonably support either affirming or reversing the Commissioner's decision, [the court] may not

4  substitute its judgment for that of the Commissioner." *Jamerson v. Chater*, 112 F.3d 1064, 1066

5  (9th Cir. 1997) (citation omitted).

## III.  DISCUSSION

The parties raise four issues in this appeal. First, whether the ALJ erred "in failing to include degenerative disc disease, other spinal abnormalities,[9] and diagnosed mental health conditions among Plaintiff's severe impairments[.]" Op. Br. at 4. Second, whether the ALJ erred by rejecting Plaintiff's subjective complaints. *Id.* Third, whether the ALJ erred in determining Plaintiff's residual functional capacity.[10] *Id.* Fourth, whether the ALJ erred at step five by relying on vocational expert testimony, which was based on an incomplete hypothetical, to find Plaintiff not disabled. *Id.* The Court addresses each issue in turn.

### A.  Plaintiff's severe impairments

"At step two of the disability analysis, the ALJ must determine whether the claimant has any 'severe medically determinable' impairments." *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (citing 20 C.F.R. § 416.920(a)(4)(ii)). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not suffer from a severe impairment, the claimant is not disabled. *See id.* §§ 404.1520(c), 416.920(c).

The ALJ found that Plaintiff suffers from the following severe impairments: "degenerative joint disease of the bilateral knees with mild degenerative joint disease of the right knee per 2017 MRI, and partial tear in the left knee ligament; obesity; PTSD; and substance abuse disorders."

---

[9] These include "mild levoscoliosis and mild chronic anterior wedging of the L1 vertebrae[]" which Plaintiff contends "are separate and distinct diagnoses from degenerative disc disease[.]" Reply Br. at 2.

[10] A claimant's residual functional capacity "is the most [they] can do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). It "is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work." *Ferguson*, 95 F.4th at 1198 (citing 20 C.F.R. § 416.920(e).

AR at 21 (internal citations omitted).

Plaintiff argues that the ALJ erred at this step because the ALJ did not properly consider degenerative disc disease, mild chronic anterior wedging of the L1 vertebrae, mild levoscoliosis, related pain, ADHD, personality disorder, and anxiety disorder. Op. Br. at 9.

With respect to Plaintiff's claimed ADHD, personality disorder, and anxiety disorder, the Court finds no error by the ALJ for the reasons discussed in connection with the ALJ's assessment of medical evidence vis-à-vis Plaintiff's subjective complaints. As for Plaintiff's degenerative disc disease, the ALJ found the condition "non-severe for the claimant's current age." AR at 28. Plaintiff asserts "the ALJ appears to have relied on Dr. Biles expert testimony, which 'directly contradicts her finding that sustained an objection to Dr. Biles' testimony based on his 'incorrect definition' for a severe impairment."[11] Op. Br. at 10. The ALJ's decision, however, relies on imaging studies in the record. Specifically, the ALJ noted that "[e]ven as late as February 19, 2021, there were still only mild degenerative changes shown on lumbar spine radiograph." AR at 26 (citing Ex. 9F, p. 10); *see also* AR at 21 (citing Ex. 9F, p. 10). The ALJ's determination that Plaintiff's degenerative disc disease does not rise to the level of a severe impairment is thus supported by substantial evidence, irrespective of whether it was informed by medical expert testimony. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (ALJ did not err when classifying claimant's carpal tunnel syndrome as severe when the only medical evidence addressing the condition was a physician's letter indicating "probable unrelated carpal tunnel syndrome" and the medical record did not establish any work-related limitations arising from the impairment).

As for the mild chronic anterior wedging of the L1 vertebrae and mild levoscoliosis, while the Commissioner argues that the ALJ considered all of Plaintiff's medically determinable

---

[11] Plaintiff contends the ALJ similarly erred when deciding not to include Plaintiff's diagnosed ADHD, personality disorder, and anxiety disorder as severe impairments. Op. at 10. As discussed below, however, when the ALJ assessed Plaintiff's subjective complaints about those conditions, the medical evidence in the record did not support Plaintiff's claims about the severity of those impairments.

impairments, including those that are not severe, the ALJ did not specifically address these two conditions in her decision.[12] In this appeal, the Court is not free "to fill in the ALJ's reasoning." *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). Nonetheless, for the ALJ's omission to warrant remand, it must rise to the level of reversible error. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotations and citation omitted).

Plaintiff contends that he satisfies this standard for two reasons. First, he argues multiple medical records show that "symptoms related to his spinal abnormalities and mental health conditions have more than a minimal impact on his functioning in a workplace[,]" that he "repeatedly exhibited angry, upset, argumentative, rude, abusive behavior to various treatment providers due to pain and psychiatric symptoms[,]" and that "back pain and mental health conditions result in symptoms that interfere with his ability to, inter alia, respond appropriately to supervision, co-workers, and usual work situations, use judgment, and deal with changes in a routine work setting." Op. Br. at 10 (citing AR at 1283-1287); Reply Br. at 3 (citing AR at 1283-1287).

This argument fails. Although the ALJ did not specifically address all of Plaintiff's claimed impairments at step two, the ALJ's residual functional capacity assessment reflects limitations corresponding to the pain and behavioral issues that Plaintiff contends are a basis for remand. The ALJ found the following limitations based on the evidence in the record:

> [T]he [Plaintiff] has the residual functional capacity to perform light exertional work as defined in 20 CFR 416.967(b) consisting of the ability to lift 20 pounds occasionally; lift and carry 10 pounds frequently; stand and walk 6 out of 8 hours; except with the following limitations: the claimant can perform simple work involving no more than occasional interaction with supervisors, co-workers, or the public, and no more than occasional decision-making.

---

[12] Nor does the Commissioner specifically address these two conditions in its brief. *See generally* Resp. Br.

8

*Id.* at 24. Accordingly, although the ALJ did not consider all of Plaintiff's conditions severe, she nonetheless factored the limitations Plaintiff complains of here, to the extent supported by the record, into her residual functionality capacity assessment. By doing so, any error at step two with respect to the severity of Plaintiff's claimed impairments was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

Plaintiff next argues that the ALJ's omission of conditions at step two led to the exclusion of additional limitations – needing placement in work environments away from others and having outbursts at supervisors – that would have compelled a finding of disability based on the vocational expert's testimony. Op. Br. at 10-11; Reply Br. 3. According to Plaintiff:

> [Vocational expert] Jeanine Metildi testified that an individual with the ALJ's RFC who needed to be placed in work environments away from others or would have outbursts at a supervisor would not be competitively employable. If the ALJ had included degenerative disc disease as a severe impairment, and mild chronic anterior wedging of the L1 vertebral body, mild levoscoliosis, ADHD, personality disorder, and anxiety disorder at all, with the resulting functional mental limitations in her [residual functional capacity assessment], she would have found Plaintiff disabled per the [vocational expert's] VE testimony.

Op. Br. at 16. For that vocational expert testimony to be outcome-determinative so as to preclude a finding of harmless error in the way Plaintiff advocates for here, the Court would have to find that the ALJ erred in her assessment of the medical evidence, which she explained throughout her decision and specifically in discounting Plaintiff's subjective complaints. As discussed below, the Court cannot reach such a finding here. Accordingly, while Plaintiff contends that, based on the vocational expert's testimony, he would be unemployable if he "needed to be placed in work environments away from others or would have outbursts at supervisors," those "ifs" were properly factored into Plaintiff's residual functional capacity assessment to the extent the ALJ found them adequately supported by medical evidence in the record. Therefore, notwithstanding the ALJ's failure to specifically address any of impairments on which Plaintiff challenges the ALJ's determination at step two, the ALJ did not commit reversible error. *See Rice v. Saul*, 817 F. App'x

9

395, 398 (9th Cir. 2020) (where ALJ considered "the limitations she found supported by the record," even if she erred by omitting some limitations, the error "was harmless because substantial evidence supports the ALJ's finding of no disability.").

### B. Plaintiff's subjective complaints

In general, credibility determinations are the province of the ALJ. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.") (citation omitted). "An ALJ is not required to believe every allegation of disabling pain or other nonexertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal quotations and citation omitted). To reject a claimant's subjective complaints, "the ALJ must provide specific, cogent reasons for the disbelief." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (internal quotations and citations omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (internal quotations and citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for

rejecting the claimant's testimony.[13]  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotations and citation omitted).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." AR at 28.  With respect to claimed mental impairments specifically, the ALJ noted Plaintiff's subjective reports of significant limitations in understanding, remembering, or applying information, "severe social anxiety, especially in public and with women[,]" significant limitations in concentrating, persisting, or maintaining pace, and severe limitations in adapting or managing oneself.  *Id.* at 23-24.

The ALJ then properly discounted these subjective reports.  *Id.* at 23-24.  The ALJ pointed to mental status evaluations [that] consistently assessed [Plaintiff] with intact cognition and memory."  *Id.* at 23 (citing Ex. 1F, p. 175; Ex. 8F, pp. 2-3).  Plaintiff was "consistently noted to make appropriate eye contact, with euthymic mood . . . and . . . responded appropriately to all questions[.]"  *Id.* at 23 (citing Ex. 1F, pp. 175, 197).  He was "repeatedly observed to exhibit linear and focused thought processes and thought content, logical thought processes with no formal thought disorder and no impairment in cognition[.]"  *Id.* at 23 (citing Ex. 1F, pp. 175, 197; Ex. 8F, pp. 2-3).  The ALJ also considered the "remarkable . . . consistent reports" by Plaintiff indicating "no depressive symptoms 'at all' (0); or anxiety, [and that] he did not need more than 'as needed' psychotropic medication, and . . . did not require mental health treatment[.]"  *Id.* at 23-24.  The ALJ also noted the absence of any documented psychiatric treatment or related hospitalization, and Plaintiff's reports of remission from illicit substances.  *Id.* at 24.

---

[13] The Commissioner disputes this standard of review, *see* Resp. Br. at 6, but the Ninth Circuit has reaffirmed the specific, clear and convincing framework when the Commissioner has raised similar challenges in other cases.  *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) ("The government disputes that standard of review. . . .  [T]he government argues that we review the ALJ's decision only for specific reasons and that 'clear and convincing' reasons are not required.  We disagree.").

These "contradiction[s] with the medical record [are] a sufficient basis for rejecting [Plaintiff's] subjective testimony." *See Carmickle*, 533 F.3d at 1161; *see also Rice*, 817 F. App'x at 398 ("[T]he ALJ reasonably determined that the severity of Rice's subjective complaints was not fully credible because records showed generally mild findings, Rice failed to attend physical therapy, and many examinations were within normal limits"). The ALJ's reliance on the fact that Plaintiff "grossed a near $12,823.12 for the year 2019 working as a security guard," *id.* at 23, further supports the ALJ's weighing of Plaintiff's testimony. *See Nadon*, 145 F.4th at 1136 ("An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim, regardless of whether the work constitutes substantial gainful activity."); *see also Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal quotations and citations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The evidence of conservative treatment also supports the ALJ's conclusion. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (determining that the ALJ properly discounted the claimant's subjective testimony based on her "generally conservative treatment plan").[14] While Plaintiff urges the Court to consider his explanations for why his

---

[14] Plaintiff asserts that "[n]owhere in the ALJ's decision does she mention . . . ADHD, Personality disorder or Anxiety disorder." Reply Br. at 4. Not so. As discussed above, the ALJ noted Plaintiffs' subjective complaints of severe social anxiety but properly discounted them. *See* AR at 22. With respect to Plaintiff's alleged ADHD, the ALJ noted that Plaintiff identified as a functional addict because methamphetamine helped with his ADHD and that Plaintiff declined mental health services, stating during an August 2, 2019 mental health evaluation, that he "would not benefit from them at th[e] time." *Id.* at 26 (citing Ex. 8F, pp. 2-3); *see also id.* at 25 (stating that Plaintiff was diagnosed with ADHD while incarcerated). As for Plaintiff's claimed personality disorder, the ALJ noted that that "[a]lthough the LMFT [licensed marriage and family therapist] to which [Plaintiff] reported these symptoms assessed him with a personality disorder, as stated correctly by the impartial medical expert psychiatrist, a LMFT is not an acceptable medical source for confirming a medical diagnosis for Social Security purposes." *Id.* at 23 (citing Ex. 8F, pp. 2-3). While Plaintiff contends that the ALJ's reliance on the medical expert's testimony was improper in light of the objection the ALJ sustained, Reply at 2, to the extent the

12

treatment plan is not a proper basis for rejecting his credibility, *see* Reply Br. at 5, where, as here, "there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *See Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).[15]

With respect to Plaintiff's claimed physical impairments and related pain, the ALJ noted:

> The record documents what is described as mild degenerative joint disease of the bilateral knees. In 2017 this condition was assessed as stable and with no need for surgery (Ex. 1F, p. 78). The mild degenerative change for the lumbar spine is non-severe for the claimant's current age; and the compression fracture/or "Boxer's Fracture" in his hand/little finger, would be expected to improve within 12 months, according to impartial medical expert testimony. Considering the full effects of obesity, which would put more strain on the claimant's knees and spine, the record is supportive of light work. However, his obesity is not morbid, as the BMI was never higher that [*sic*] about 34; and as physical examinations consistently found normal gait with full strength and full range of motion, he is neurologically intact, etc., the record does not support more limitations for any continuous 12-month period.
>
> …
>
> The claimant bases his alleged onset date of January 9, 1985, or since birth, on the combination of his impairments and related limitations including right knee arthritis, ligament tears and left knee bone marrow edema . . . hepatitis C, and seasonal allergies. . . . The record shows no surgery, because the claimant was neurologically stable, and his knees were stable. There was no treatment for hepatitis C, which presumably resolved upon remission from substance abuse. The . . . seasonal allergies do not appear to have associated work-related limitations.

---

ALJ relied on that testimony for the proposition that an LMFT is not an acceptable medical source in the Social Security context, it was harmless error. *See Morales v. Colvin*, No. SACV 12-1740-OP, 2013 WL 2237964, at *5 (C.D. Cal. May 21, 2013) ("The Court notes that a licensed marriage and family therapist ('LMFT') is not considered an acceptable medical source under the Social Security Regulations.") (citations omitted).

[15] Even if the ALJ erred in discounting Plaintiff's subjective complaints on the basis of conservative treatment, *see Carmickle*, 533 F.3d at 1162 ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."), "the ALJ's remaining reasoning and ultimate credibility determination [a]re adequately supported by substantial evidence in the record." *See id.* at 1162-1163. Thus, any failure by the ALJ to consider the side effects or concerns that explained Plaintiff's declining certain medications or treatment is harmless. *See id.*

AR at 27.

In addition, the ALJ noted that "[e]ven as late as February 19, 2021, there were still only mild degenerative changes shown on lumbar spine radiograph[.]" *Id.* at 26-27 (citing Ex. 9F, p. 10). The ALJ also found "no abnormality of a major joint causing chronic joint pain or stiffness with instability[.]" *Id.* at 24. With respect to the evidence in the record documenting chronic bilateral knee pain, the ALJ noted that a 2016 x-ray was " ' unremarkable.' " *Id.* at 25 (citing Ex. 1F, p. 184). The ALJ further found:

> A right knee MRI revealed mild patellar subluxation without chondral injury, and a very mild (or grade II) chondromalacia without bone marrow edema and no evidence of ligament or meniscal injury (Ex. 1F, p. 134). In the left knee, there was choric high grade but poorly defined ACL tear, with mild bone marrow edema, and mild patellar subluxation without chondromalacia (Ex. 1F, p. 132). On December 19, 2017, Dr. Patterson examined the claimant and found that the knees were stable and the claimant, neurologically intact, so he would not need surgery. Therefore, he offered injections instead (Ex. 1F, p. 78).
>
> Although the claimant apparently did not have knee surgery, and on February 15, 2018, he reported level '0' pain (on a 1-to-10 pain scale), stating "I'm find [*sic*]. I'm an airborne Vet, nothing gets me down" (Ex. 1F, p. 36), the record documents medical evidence and durational treatment to support a finding of severe degenerative joint disease of the knees. The claimant would receive knee injections in 2018 (Ex. 1F, p. 35).

*Id.* at 25. The ALJ further noted that although on December 10, 2018, Plaintiff "reported 'excruciating pain' in both knees, making it difficult for him to climb stairs, he declined any more injections." *Id.* at 26 (citing Ex. F, pp. 9). On April 23, 2019, Plaintiff "reported that his knee condition 'was slowly getting better, but hurts after work.' " *Id.* (citing Ex. 4F, pp. 10-11).

"Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work." *Smartt*, 53 F.4th at 499. The Court finds that the ALJ did so here by identifying "specific, clear, and convincing reasons supporting a finding that [Plaintiff's] limitations were not as severe as [he] claimed." *See id.* (quotation marks and citation omitted). These reasons are supported by the substantial evidence in the record. While Plaintiff contends that different conclusions should be reached based on the evidence in the record, this Court may not second-guess the ALJ in this appeal. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility

1  finding is supported by substantial evidence in the record, [courts] may not engage in second-
2  guessing.") (citation omitted).  Accordingly, the ALJ did not err in discounting Plaintiff's
3  subjective complaints.

### C. The Residual Functional Capacity Assessment and Hypothetical to The Vocational Expert

Finally, Plaintiff argues that the ALJ erred in determining his residual functional capacity and at step five because the hypothetical posed to the vocational expert was incomplete.  Op. Br. at 14-15.  Specifically, Plaintiff contends the ALJ erroneously omitted "all of [his] spinal abnormalities and mental health conditions as severe impairments," and those based on his "credible written symptom testimony" from the residual functional capacity determination and the hypothetical posed to the vocational expert.  *Id.*  These challenges are derivative of Plaintiff's other arguments, which the Court has already rejected.  They, too, thus fail.  *See Nadon*, 145 F.4th at 1138 ("Because this argument relies on the premise that the ALJ erred in discounting the healthcare professionals' opinions, which we have rejected, it too fails.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-1176 (9th Cir. 2008)); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").  Accordingly, the Court finds no error by the ALJ in determining Plaintiff's residual functional capacity or at step five.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's request for reversal of the Commissioner's final decision is **DENIED**.  The Commissioner's request to affirm the denial of Social Security benefits is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 2, 2025

**A**RACELI **M**ARTÍNEZ-**O**LGUÍN
**United States District Judge**

15